SUMNER D. YORK, administrator with the will annexed, *vs.* MARY E. FLAHERTY & others.

Essex.    May 15, 1911. — October 16, 1911.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Insurance,* Life. *Husband and Wife. Fraud. Statute of Limitations. Assignment. Equity Pleading and Practice,* Master's report, Reservation, Parties. *Equity Jurisdiction,* To recover premiums on life insurance policy paid in fraud of creditors, Interest. *Interest. Trust. Executor and Administrator.*

The right of action for a recovery of the amounts of premiums, which have been paid upon a policy of life insurance by the insured in fraud of his creditors and which with interest thereon, by R. L. c. 118, § 73, now St. 1907, c. 576, § 73, "subject to the statute of limitations" are to inure to the creditors' benefit "from the proceeds of the policy," does not accrue, where there has been no surrender of the policy under a clause providing for a surrender for value at the option of the insured, until the maturity of the policy by the death of the insured; and therefore, where an insured, who for more than six years had been insolvent and had been paying premiums in fraud of his creditors upon a policy of which his wife was the beneficiary, has died without the policy being surrendered, and the insurance company has paid to the widow the proceeds of the policy, the administrator of the estate of the insured in a suit begun a year after the death of the insured can recover from the widow the amount of all premiums paid by the insured within six years before his death with interest on each sum so paid from the date of its payment.

One, who had insured his life for the benefit of his wife and who was insolvent and was paying premiums upon the policy in fraud of his creditors, procured a loan from the insurance company and gave to the company a promissory note signed

both by himself and by his wife and secured by an assignment of the policy also signed by them both. After the death of the insured the company paid to the widow, who availed herself of the protection of R. L. c. 118, § 73, now St. 1907, c. 576, § 73, the proceeds of the policy less the amount of the loan, and the administrator of the estate of the insured, which had been declared insolvent, sought by a suit in equity to recover from the widow under the provisions of the above statute the amount of the premiums paid in fraud of creditors. The widow contended that the loan with the policy as security was in effect an advance payment by her for her husband from the proceeds of the policy, which were to become hers, and therefore that it was in effect a debt owed to her by the estate, and that she should be allowed to cut down the amount to be paid to the plaintiff by the amount of the loan. *Held,* that the widow, having availed herself of the protection of the statute, also must be bound by its requirement that the amounts of the premiums paid in fraud of creditors should inure to their benefit from the proceeds of the policy, and that her contention was without merit.

An instrument in writing by one who had insured his life in the sum of $5,000 for the benefit of his estate, requesting the insurance company to alter the contract of insurance by making $4,000 of the amount of the policy payable to the wife, and $1,000 thereof payable to the son of the insured, after the company in writing has assented to and has complied with the request, operates as an effectual transfer, although neither the wife nor the son knew thereof until after the death of the insured; and, where such transfer was made in fraud of creditors, while the direction for the payment of $1,000 to the son is ineffectual, the direction to pay $4,000 to the wife has full force by reason of St. 1907, c. 576, § 73.

In a suit in equity by the administrator of one who had insured his life, against the insurance company, among other defendants, it appeared that the company was holding a part of the proceeds of the policy which the insured in fraud of creditors had attempted to convey to his son, but it did not appear that the money was retained merely in consequence of a demand of creditors of the insured that it should be held and of the suit brought by the administrator in their behalf, or that the company had realized any interest thereon, and a master to whom the suit was referred charged the company, without objection on its part, with interest on the sum so held. The case was reserved for determination by this court upon the pleadings and the master's report. *Held,* that the master's report must be followed and that the company must be charged with interest.

Where one, who held a policy of life insurance payable to his estate, in fraud of his creditors transferred the policy to his wife, and died, the wife may retain the proceeds of the policy in accordance with the provisions of St. 1907, c. 576, § 73, although the insured during his lifetime induced creditors to make advances to him by oral representations that he had insurance which in case of his death would be available and sufficient to satisfy their claims.

Where an insolvent person holds a policy of life insurance payable to his estate and, knowing himself to be insolvent, pays premiums upon it for many years and up to a short time before his death, when he transfers the policy to his wife in fraud of his creditors and dies before any further premium is paid, and it does not appear that he intended at the time of the payment of the premiums thus to transfer the policy later, the wife may retain the entire proceeds of the policy under St. 1907, c. 576, § 73, because, the estate having been the beneficiary

of the policy at the time when the premiums were paid, it does not appear that the premiums were paid in fraud of creditors.

The administrator of an estate which has been declared insolvent is the proper person to sue for the amount of a policy of life insurance upon the life of the decedent which before his death he had transferred in fraud of his creditors, and also under St. 1907, c. 576, § 73, for premiums paid by the insured in fraud of his creditors upon a policy which he had transferred to his wife.

BILL IN EQUITY, filed in the Superior Court on July 25, 1907, by the administrator with the will annexed of the estate of one John J. Flaherty, late of Gloucester, against the widow of the decedent, Mabel E. Flaherty, and his son, John J. Flaherty, Jr., and the Massachusetts Mutual Life Insurance Company, alleging that the estate was insolvent and seeking an accounting with regard to, and the recovery of, sums alleged to have been paid to the defendant insurance company by the decedent in fraud of his creditors as premiums upon two policies of life insurance, one for $10,000 and one for $5,000, and also the recovery of the proceeds of the $5,000 policy, the beneficial interest in which the plaintiff alleged had been transferred by the decedent from his estate to his widow and son either in fraud of his creditors or when the decedent had not sufficient mental capacity to make the transfer.

The case was referred to Hollis R. Bailey, Esquire, as master. His report contains the following findings in substance:

On January 4, 1890, the decedent took out a policy of insurance for $5,000 on his own life in favor of his then wife, Abbie S. Flaherty. On October 26, 1891, Abbie S. Flaherty died and the policy by its terms became payable to the estate of the insured and it remained so until July 14, 1906, although in 1896 the insured married Mabel E. Flaherty. On March 23, 1903, and on August 23, 1904, the insured borrowed from the company amounts aggregating $780, in each case giving to the company a promissory note for the loan and an assignment in writing of his interest under the policy as security.

In April, 1906, the insured became mortally sick.

On July 14, 1906, acting under the advice of counsel, he executed on a blank furnished by the insurance company the following:

" The Massachusetts Mutual Life Insurance Company is hereby authorized and requested to amend [the $5,000] contract for in-

surance . . . as follows : — Make the proceeds . . . payable in the event of my death as follows : — $1000 to John J. Flaherty, Jr., my son and the balance to Mabel E. Flaherty, my wife or the whole to the survivor and if neither beneficiary survives me to my executors, administrators or assigns.

" The said change in benefit is to be subject to the prior claims of the Massachusetts Mutual Life Insurance Company which holds said policy by assignment as collateral security for policy loan. In case the policy is closed out on account of the non-payment of premium or other indebtedness, or non-payment of said loan or interest thereon in accordance with the terms of any such assignment any balance which may be due on account of the policy shall be paid as directed in the assignment of said policy last executed in connection with any loan which has been or shall be made by said company under said policy.

" And in consideration thereof it is hereby agreed that these changes shall be an amendment to and form a part of the original application and policy and also that the unpaid portion of any year's premium shall be and it is hereby acknowledged an indebtedness to the said company."

At the time of the execution of the foregoing instrument, the insured was insolvent and knew or reasonably ought to have known that he was so, and by what he did he intended to place the proceeds of the $5,000 policy beyond the reach of his creditors. At different times previous to July 14, 1906, as an inducement to certain of his creditors to sign or indorse notes for his accommodation, he had told them in substance that he held insurance policies which he was keeping paid up and that this insurance would be available and would be sufficient on his death to pay his debts.

On July 18, 1906, the company appended to the policy the following statement, signed by its secretary :

" Upon the representation of the insured that Abbie S. Flaherty the beneficiary has deceased the proceeds of this policy are hereby made payable subject to the prior claims of the Mass. Mutual Life Ins. Co. as follows : $1,000 to John J. Flaherty, Jr., son of the insured ; the balance to Mabel E. Flaherty, wife of the insured, or the whole to the survivor of them if living at the death of the insured, if neither beneficiary survives the insured to the

executors, administrators or assigns of John J. Flaherty the insured, a legal request in due form for payment in such manner having been received."

Neither the insured's wife nor his son had any knowledge of the above instruments or of either of them until after his death. The policy was in the possession of the insurance company.

On July 24, 1906, the insured died. After his death the widow and the son, on learning of the above instruments, elected to take the benefit of them.

The $10,000 policy was taken out by the insured on September 26, 1896, and was made payable to his second wife, Mabel E. Flaherty. On August 23, 1904, the insured borrowed $885 from the company for which he gave a promissory note, signed both by himself and by his wife, and secured by an assignment of the policy likewise signed both by himself and by his wife.

For more than six years previous to his death the insured's liabilities at all times had exceeded his assets by a considerable amount and he knew or reasonably ought to have known his insolvent condition. During those six years he paid to the company as premiums on the $10,000 policy sums aggregating $1,513.10. Interest on the sums so paid from the dates of their respective payments to the date of the suit amounted to $371.60. The sum of the premiums paid during the six years immediately preceding the date of the suit was $1,255.10 and interest thereon, computed in the same way, was $268.41.

The insurance company paid the widow on August 16, 1906, $9,147.68, being the full amount of the $10,000 policy less the amount due on the loan secured by its assignment; and on the same day the company paid her $3,222.63 upon the $5,000 policy, which was the full amount of that policy less the loans made on its security and the $1,000 attempted to be assigned to the son. That $1,000 the company retained.

The master ruled that the insurance company should pay to the plaintiff the $1,000 which it had retained and which the son claimed, with interest amounting to $218.50; and that the widow should pay to the plaintiff $1,255.10, as premiums paid on the $10,000 policy in fraud of creditors within six years before the filing of this suit, and interest on such payments to the date of the filing of the report (June 7, 1910), amounting to

$484.28; as well as a proportionate part of the premiums paid on the $5,000 policy within six years before the commencement of this suit, and interest thereon.

The case was reserved for determination by this court by *Fox*, J.

The case was submitted on briefs.

*A. P. White & F. H. Tarr*, for the plaintiff.

*H. Parker & L. S. Simonds*, for the defendants.

SHELDON, J. 1. It is not disputed that Mrs. Flaherty is entitled to hold the net proceeds of the $10,000 policy on the life of her late husband, or that subject to the statute of limitations she is liable to account to the plaintiff for the premiums which were paid thereon by her husband. R. L. c. 118, § 73. St. 1907, c. 576, § 73. *Bailey* v. *Wood*, 202 Mass. 549. *Bailey* v. *Wood*, 202 Mass. 562. The master ruled that this liability was for the premiums paid within six years before the bringing of the suit; the plaintiff contends that his cause of action did not accrue until the death of Mr. Flaherty, and includes the premiums paid within six years before that event, being all the premiums which were found to have been paid in fraud of creditors. In our opinion, this contention is correct.

These premiums by the terms of the statute are to inure to the benefit of the creditors " from the proceeds of the policy," and in no other way. The right to recover their amount cannot accrue until the maturity of the policy, which was to be upon Mr. Flaherty's death. The stipulation for surrender values does not affect this, for that was conditional upon a surrender by the beneficiary, which never was made or required to be made. *Blinn* v. *Dame*, 207 Mass. 159. *Wilde* v. *Wilde*, 209 Mass. 205. But the statute of limitations begins to run only after the cause of action has accrued. R. L. c. 202. Accordingly it has been held in Alabama that a cause of action like this arises and becomes fixed upon the death of the person insured. *Lehman* v. *Gunn*, 124 Ala. 213. No action could have been maintained by a creditor of Mr. Flaherty at the time of the payment of any premium, either against the company (*Central Bank of Washington* v. *Hume*, 128 U. S. 195) or any one else, for there could be then no proceeds of the policy. There is nothing to the contrary of this in *Troy* v. *Sargent*, 132 Mass. 408.

There was, if there could have been, no fraudulent concealment in the meantime of the cause of action.   R. L. c. 202, § 11. The master has not found such a concealment by any one ; upon the facts reported, we cannot make such a finding, even as to Mr. Flaherty, under the rule stated in *Knowles* v. *Knowles*, 205 Mass. 290, 294.   We need not consider whether the rights of Mrs. Flaherty would have been affected by such conduct on the part of her husband.

2. We need not determine whether the loan made to Mr. Flaherty by the insurance company should be treated as merely a loan to him secured by a pledge of the property of his wife, or as an advance payment of a part of the amount to become due under the policy and operating to reduce that amount *pro tanto*, and so as made in legal effect to the wife, to whom the policy was payable and who joined in signing the note.   However this may be, full premiums, lessened only by the right to share in the surplus funds of the company, were in fact paid both before and after the loan was made; and the statute is express that these payments shall inure to the benefit of the husband's creditors. It is immaterial whether Mrs. Flaherty, having paid the loan out of the proceeds of the policy after her husband's death, has a claim for indemnity against his insolvent estate, under the rule of *Brown* v. *Bixby*, 190 Mass. 69, and cases there cited.   She has chosen to claim the benefit of the statute which gives to her the proceeds of the policy at the expense of his creditors; she must bear the burden which the same statute puts upon her by accounting to them for the amount of the premiums which were paid in fraud of their rights.   As was said by the plaintiff in his brief, it would frustrate the purpose of the statute to allow her to diminish this amount by deducting therefrom the amount of this loan, or even by reducing it in proportion to the amount of the loan as compared with the total amount of the policy.

It follows that as to this part of the case the plaintiff is entitled to recover from Mrs. Flaherty the sum of $1,513.10, instead of the smaller sum of $1,255.10, with interest.

3. There was a sufficient transfer of the $5,000 policy to Mr. Flaherty's second wife and son, although it was not known to them until after his death.   This transaction was not in form an assignment, although its effect was the same and in its legal

operation it was tantamount to an assignment. *Bailey* v. *Wood*, 202 Mass. 562, 573. It was effected by an amendment or alteration of the terms of the policy made by the insurance company at the request of the person insured, these being then the only parties in any way interested in the contract of insurance. This made the terms of the policy such that $4,000 were to be paid on the death of the insured to his second wife, and $1,000 to his son. It thus stood as if the policy originally had been made payable to them. No consent on their part was required. The validity of a policy of life insurance made payable to the wife or child of the insured does not depend upon their consent to the provision when originally made. *Derome* v. *Vose*, 140 Mass. 575. *Johnson* v. *Alexander*, 125 Ind. 575. No such requirement was made in the statute. R. L. c. 118, § 73. The case is not within the decisions in which it has been held that a gift is incomplete and invalid unless there has been something equivalent to a delivery and acceptance. We need not consider whether it is open to the plaintiff upon the pleadings to contend that the gift of the policy was incomplete and ineffectual; for such a contention could not be sustained.

4. It remains true, however, that this policy was not originally effected in favor of either of these beneficiaries, but has only since been made payable to them by a transaction which was in fraud of Mr. Flaherty's creditors. *Matthews* v. *Thompson*, 186 Mass. 14. Such a transfer made to a wife cannot itself be avoided by creditors; made to a son, it can be. *Bailey* v. *Wood*, 202 Mass. 562. And it seems plain that the transfer to the wife of a stated part of the amount of the policy cannot be avoided by creditors any more than could have been done if the whole amount had been payable to her. But the plaintiff, being entitled to avoid the transfer to the son, can hold the $1,000 made payable to him. As the insurance company has retained this sum, the plaintiff is entitled to a decree therefor against the company.

5. The master has charged the insurance company with interest on this sum. If the company had retained the money merely in consequence of the demand of the creditors in this suit and of these proceedings by them or in their behalf, and was not shown to have realized any interest thereon, it ought not to have

been charged with such interest. *Norris* v. *Massachusetts Mutual Life Ins. Co.* 131 Mass. 294, 296. But no such facts have been found, nor have findings as to these questions been asked for by the company. It has made no objection to this charge of interest; and of course no other defendant can raise the question. We must as to this follow the master's report.

6. The transfer to the wife cannot be avoided by reason of the representations and assurances made by Mr. Flaherty to some of his creditors. The master has found that there was no assignment legal or equitable of any insurance as security and no trust created for the benefit of these creditors or of his creditors generally. For that reason such cases as *Clark* v. *Flint*, 22 Pick. 231, are inapplicable.

7. No premiums were paid on the $5,000 policy after its transfer, and we do not think that it can be said that any premiums paid before that time were paid in fraud of the creditors of the insured. When these were paid, after the death of his first wife, he alone had the beneficial interest in the policy, and the creditors suffered no prejudice. It was not found, and we do not see that it ought to have been found, that he made any of these payments with the intention of transferring afterwards to his second wife, or to any one else, the fund which should be created or increased by these payments. If this had been the case, a different question would be presented. The fund itself, but for the provisions of the statute, could have been appropriated by the creditors; so far as it was made payable to the son of the insured it is now to be given to them. We cannot give them also the premiums which were not paid in fraud of their rights; and we need not discuss the questions which have been argued as to any apportionment of these premiums.

8. The estate of Mr. Flaherty having been found to be insolvent, the plaintiff is the proper person to bring and maintain this bill. *Wall* v. *Provident Institution for Savings*, 6 Allen, 320. *Parker* v. *Flagg*, 127 Mass. 28. *Putney* v. *Fletcher*, 148 Mass. 247.

The plaintiff is to have a decree against the defendant insurance company for $1,000 with interest as found by the master and with further interest until the entry of the final decree, and against the defendant Mabel E. Flaherty for $1,513.10 with

interest of $360.61 to July 25, 1907, the date of bringing suit, and with further interest to the date of the final decree. He should have costs against all the defendants.

*So ordered.*