This suit was instituted by complainant to obtain a decree that certain shares of stock, money and personal property are the property of defendant Max Goodman and were caused by him, while insolvent, to be placed in the names of and continued to be held by defendants Anna Goodman, Richard Goodman and Marguerite Ryan, or one of them, fraudulently and for the purpose of defeating the collection of a judgment recovered by Samuel Greenberg against said Max Goodman, which judgment complainant holds by assignment. A further object of the suit is to obtain a decree that payments for *Page 150 
premiums on policies of insurance on the life of Max Goodman for six years prior to filing the bill of complaint, were made in fraud of complainant as a judgment creditor of Goodman and that complainant is entitled to a lien on the future proceeds of said policies to the extent of such premium payments, with interest.
(The evidence to establish the complainant's causes of action was considered and the conclusion reached that the defendant Max Goodman was insolvent and that the shares of stock, money and personal property in question were his property, fraudulently held in the name of other defendants for the purpose of hindering, delaying and defrauding complainant in the collection of his judgment. Money deposited from time to time in a checking bank account maintained in name of Goodman's wife Anna, was held to be the sole property of Goodman; it was also held that a book account of American Metal Bed Co., designated as the "new company," with said Anna Goodman, purporting to show salary paid her, actually represented drawings made from the new company for Goodman's benefit).
The final cause of action is on a claim asserted by complainant that all payments made for premiums on policies of insurance on the life of Max Goodman for a period of six years prior to February 9th, 1940, the date of filing the bill of complaint herein, were made by Goodman and were in fraud of complainant. He seeks a decree adjudicating that such payments were fraudulently made as to him; fixing the amount of such payments; declaring that he has a lien for such amount payable out of the proceeds of the policies upon the maturity thereof and restraining the defendants from transferring their interest in the policies or encumbering them in any way which will affect complainant's interest. Several policies are involved, all of which were effected by Goodman on his life for a total of about $100,000, under which his wife Anna Goodman and his son Richard Goodman, either jointly or severally, are the beneficiaries.
Complainant's claim is asserted by virtue of R.S. 17:34-28, the pertinent provisions of which are as follows: *Page 151 
"When a policy of insurance is effected by any person on his own life, * * * the lawful beneficiary thereof * * * shall be entitled to its proceeds, against the creditors and representatives of the person effecting it. * * * Subject to the statute of limitations, the amount of any premiums for the insurance paid in fraud of creditors, with interest thereon, shall, however, inure to their benefit from the proceeds of the policy, but the company issuing the policy shall be discharged of all liability thereon by payment of its proceeds in accordance with its terms, unless, before the payment, the company shall have written notice by or in behalf of some creditor, with specification of the amount claimed, claiming to recover for certain premiums paid in fraud of creditors."
As I have heretofore said, Goodman was insolvent as far back as December, 1932, and still is, notwithstanding the assets I have found belonging to him held in the names of his wife and son. All payments of premiums for the six-year period in question were made by checks of the new company and charged against its account with Max Goodman or Mrs. Goodman, or by checks drawn against the checking account standing in Mrs. Goodman's name. Complainant has given notice to all insurers that he claims to be entitled under the statute to recover out of the proceeds of the policies, premiums paid within six years of the filing of his bill. I consider it settled that premiums paid by an insolvent debtor on policies on his life are payments in fraud of his creditors within the meaning of the quoted statute. Lanning v. Parker,84 N.J. Eq. 429; G.P. Farmer Coal and Supply Co. v. Albright,90 N.J. Eq. 132; Borg v. McCroskery, 120 N.J. Eq. 80; Goren v.Loeb, 124 N.J. Eq. 335. The question to be determined is: Is complainant, in advance of the maturity of the policies, entitled to an anticipatory or declaratory judgment fixing the amount of his claim and decreeing payment out of the proceeds of the policies when they mature?
The statute declares the equitable principle that so much of an insolvent debtor's assets as the debtor has taken from his creditor and used to create a fund for the benefit of a third person, should be applied to the creditor's claim and it gives creditors the right to recover such assets, paid by the debtor by way of premium into a policy of insurance on his life, out of the policy proceeds whether in the hands of the *Page 152 
insurer or the beneficiary. It makes the extent of the right of recovery subject to the statute of limitations, but it does not fix or limit the time when the creditor must assert his claim; it merely provides that to charge such proceeds in the hands of the insurer, notice must be given prior to payment of such proceeds. If the creditor does not assert his claim by giving notice to the insurer and by bringing suit to recover out of the policy proceeds until after the policy has matured, the six-year period for which he can recover runs from the time of commencement of the suit. Lanning v. Parker, supra. Although the creditor can recover the amount of his claim only out of the policy proceeds when payable, there is nothing in the statute which requires him to wait until that time before notifying the insurer that he claims a lien on such proceeds. To hold that the creditor cannot take advantage of his statutory right to give the insurer notice of his claim, and must withhold suit to establish it until after his debtor's death or other maturity date of the policy, is to read something into the statute which is not there and the result would be to defeat the creditor's claim to recover premiums fraudulently paid over a long period of years, because of the statute of limitations.
The complainant here does not assert a present right to recover such premiums. He merely asserts a right to acquire a lien therefor by giving notice to the insurers, and to have the amount of his lien established by decree of court at a time when the parties are alive and the evidence to prove his claim is available. I do not think it is the purpose of the statute to limit a creditor's right of recovery to premiums paid in fraud of him for the last six years of the life of a policy and leave him remediless as to like payments made prior to such period, but that it is the intent of the statute to give a creditor the right to recover any premium paid in fraud of him, provided he makes claim on the insurer by notice served within six years after any such payment. I believe the intent of the statute is to give complainant a lien on the proceeds of the policies for the amount of all premiums fraudulently paid, subject to the statute of limitations, and *Page 153 
that it is entirely equitable to hold that he may, prior to maturity of the policies and after he has given notice to the insurers, seek a declaratory judgment fixing the amount of his lien and declaring his right to have payment of such amount out of the policy proceeds when the same become available under the policy terms.
It may be said that the lien which complainant claims by virtue of the statute becomes effective immediately on service of his notice on the insurers and that suit to establish the amount of the lien is not necessary unless and until his right to payment is disputed. But complainant's right to payment will not accrue until a future time and the statute of limitations may run against the amount claimed in his notice if he does not seek to establish his claim now. Also, while complainant's notice to the insurers may be binding on them, it might be ineffectual as against the rights of an assignee of the policies who has no notice of complainant's rights. Besides the right to have the fact and amount of his lien determined now, complainant is entitled to have his lien protected against future transfer or encumbrance of the policies. Notice of a decree rendered now will be binding on the insurance carriers, at least as to the amount of complainant's lien, even though they are not parties to this suit.
I know of no case wherein the question here presented has been considered other than Stokes v. Amerman, 121 N.Y. 337, a decision by the New York Court of Appeals. In that case the question was whether the plaintiff's complaint stated facts sufficient to constitute a cause of action. There the complaint charged that payments by an insolvent debtor of premiums on a policy of life insurance were made in fraud of the plaintiff, who sought to establish his rights as a creditor in the proceeds of the policy, prior to the maturity date of the policy. Construction of a New York statute quite similar to our statute was involved and the New York court recognized the right of the plaintiff creditor to maintain a suit of the character of the instant action, and held that the complaint stated a case which entitled the plaintiff therein to relief. *Page 154 
The defendants cite the case of Greiman v. Metropolitan LifeInsurance Co., 96 Fed. Rep. 2d 823, as holding that the right of creditors of a bankrupt debtor to recover premiums paid by the debtor, does not arise under our insurance statute until after the policy has matured, but I do not so read that decision. There a referee in bankruptcy had decided that the bankrupt should pay to his trustee the amount of premiums fraudulently paid on his policy of insurance, or surrender the policy to the trustee for the purpose of recovering such premiums out of the cash surrender value thereof. In the reported opinion of the Circuit Court of Appeals it is stated that the sole question at issue was whether the trustee could recover from the cash surrender value of the policy the sums which the bankrupt had paid by way of premiums in fraud of creditors, and it was held that under our statute the right of creditors to recover
premiums does not arise during the lifetime of the insured and therefore creditors could not reach the cash surrender value of the policy. To the same effect is Slurszberg v. PrudentialInsurance Co., 15 N.J. Mis. R. 423; 192 Atl. Rep. 451.
I conclude that complainant is entitled to a decree determining the amount of premiums paid by Goodman personally or through the new company and the bank account maintained in his wife's name, and also through the application of dividends declared on any of his policies, or loans made thereon, for the period of six years prior to filing the bill of complaint herein, and declaring that complainant is entitled to a lien for the amount thereof, with interest, which shall be payable out of the proceeds of the policies as they respectively mature, before the cash surrender values, or such proceeds, can be paid to the defendants. For the purpose of ascertaining the amount of premiums so paid, a reference will be made to a master and in the meantime, as well as after the amount of complainant's lien is ascertained, the defendants will be restrained from making assignment of any interest in and from in any way transferring or encumbering said policies, except subject to complainant's lien. *Page 155